**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

_____
                                                          )
**JOHN CANTY and KIM CANTY,**                )
                            **Plaintiffs,**          )          **CIVIL ACTION**
**v.**                                                       )        **NO.  4:19-12472-TSH**
                                                          )
**WELLS FARGO BANK, N.A.,**                 )
                            **Defendant.**           )
_____ )

### MEMORANDUM AND ORDER ON DEFENDANT'S MOTION TO DISMISS (Docket No. 38)

**May 22, 2020**

**HILLMAN, D.J.**

John Canty ("Mr. Canty") and Kim Canty ("Mrs. Canty") (collectively, "Plaintiffs") filed this action against Wells Fargo Bank, N.A. ("Defendant"), alleging breach of contract, breach of the covenant of good faith and fair dealing, violations of Chapters 93A and 140D of the Massachusetts General Laws, and violations of the Real Estate Settlement Procedures Act ("RESPA").  Defendant moves to dismiss for failure to state a claim.  (Docket No. 38).  For the following reasons, the Court **_grants_** in part and **_denies_** in part its motion.

### Background[1]

In 2006, Plaintiffs refinanced their home through World Savings Bank.  Defendant acquired the loan two years later.  Although Plaintiffs timely paid the balance due on their mortgage in the following few years, they began to have difficulty making payments in 2011 and sought loss mitigation assistance.  Defendant's loan servicer informed Plaintiffs that they were not

---

[1]     The following facts are taken from the Plaintiffs' amended complaint (Docket No. 36) and assumed true for the purposes of this motion.

eligible for a loan modification because they were current on their mortgage.  Plaintiffs stopped

making payments and, after entering default, reapplied for a loan modification.

Defendant received Plaintiffs' application but claimed that it was missing certain

information.  Although Plaintiffs repeatedly resubmitted materials to Defendant in following

months, Defendant continued to assert that it had not received all the required documents.  And in

August 2012, Defendant claimed that Plaintiffs' application was inadequate for the further reason

that "a signature on one of the documents was not authentic," even though this allegation was not

accurate.  (Docket No. 36 at 3).  Defendant eventually denied Plaintiffs' application as expired.

Plaintiffs reapplied for a loan modification in 2015.  On October 23, 2015, Defendant

determined that Plaintiffs did not meet the required debt to income ratio for a loan modification

under the Home Affordable Modification Program ("HAMP").[2]  It provided its calculations in a

subsequent letter, and these calculations allegedly "failed to consider all of Plaintiffs' housing

expenses."  (Docket No. 36 at 4).  Plaintiffs filed an appeal in November 2015 requesting an

explanation of Defendant's review and, after Defendant failed to provide specifics, contacted the

HAMP assistance hotline in January 2016.  A HAMP agent allegedly "confirmed that Defendant

failed to properly calculate Plaintiffs' housing expenses."  (Docket No. 36 at 5).  In March 2016,

Defendant "contacted Plaintiffs and acknowledged having made this error."[3]  (Docket No. 36 at

---

[2]      Defendant allegedly also denied a loan modification under the Proprietary Step-Rate
Program without "includ[ing] a specific reason for this denial."  (Docket No. 36 at 4).  Defendant
challenges the accuracy of this statement (Docket No. 39 at 3 n.4), but whether the reason listed
in the denial letter was sufficiently specific is a factual dispute which the Court must resolve in
Plaintiff's favor at this stage in the litigation.
[3]      Defendant contends that "MHA Response 1 and MHA Response 2 directly contradict
Plaintiffs' allegations that Wells Fargo made or acknowledged making any error in its loan
modification review."  (Docket No. 39 at 4 n.5).  But the complaint does not specify that Defendant
made this concession in either response, and to the extent the content of these responses is
inconsistent with Plaintiffs' allegations, the inconsistency creates a factual dispute which the Court
must resolve in Plaintiffs' favor at this stage in the litigation.

5).  Defendant, however, refused to reconsider its denial and instead instructed Plaintiffs to file a

new application for a loan modification.

Plaintiffs filed a third application for a loan modification in April 2016.  One month later,

Defendant "informed Plaintiffs in a phone conversation that Defendant would not consider[]

Plaintiffs again for a loan modification, for the alleged reason that there was not a significant

change in Plaintiffs' circumstances."  (Docket No. 36 at 5).  On July 6, 2016, however, Defendant

mailed Plaintiffs two denial letters in which Defendant indicated that it had considered Plaintiffs

for a loan modification.  One of the denial letters again miscalculated Plaintiffs' housing expenses.[4]

Plaintiffs appealed the denials without success.

In response to letters from Defendant suggesting eligibility, Plaintiffs applied for a loan

modification under Section 35B of Chapter 244 of the Massachusetts General Laws.  Defendant

denied this application without providing any explanation.  Plaintiffs requested the results of the

required net present value assessment, but Defendant failed to provide them.

In March 2018, Defendant scheduled a foreclosure sale of Plaintiffs' home.  Plaintiffs

informed Defendant that it had miscalculated the loan balance by, *inter alia*, including payment

charges that had never actually occurred and finance charges for months in which Defendant failed

to send Plaintiffs a billing statement.  Plaintiffs sent Defendant multiple letters requesting that it

correct these mistakes.  Defendant proceeded to schedule two more foreclosure sale dates while it

researched the mistakes.  Plaintiffs ultimately sent a Chapter 93A demand letter in December 2018.

Defendant did not respond to the letter, and Plaintiffs filed suit in state court.  Defendant removed

---

[4]     The other letter again denied Plaintiffs a loan modification under the Proprietary Step-
Rate Program.  (Docket No. 36 at 5).

the case to this Court on December 6, 2019 (Docket No. 1), and following the filing of an amended

complaint, moved to dismiss all claims on April 6, 2020 (Docket No. 38).

## **Legal Standard**

In evaluating a Rule 12(b)(6) motion to dismiss, the court must accept all factual allegations

in the complaint as true and draw all reasonable inferences in the plaintiff's favor. *Langadinos v.*

*Am. Airlines, Inc*., 199 F.3d 68, 69 (1st Cir. 2000).  To survive the motion, the complaint must

allege "a plausible entitlement to relief."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 559 (2007).

"[A] plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more

than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not

do."  *Id.* at 555.  "The relevant inquiry focuses on the reasonableness of the inference of liability

that the plaintiff is asking the court to draw from the facts alleged in the complaint."  *Ocasio-*

*Hernandez v. Fortuno-Burset*, 640 F.3d 1, 13 (1st Cir. 2011).  "[W]here the well-pleaded facts do

not permit the court to infer more than the mere possibility of misconduct, the complaint has

alleged—but it has not 'show[n]'—that the pleader is entitled to relief."  *Ashcroft v. Iqbal*, 556

U.S. 662, 679 (2009) (quoting Fed. R. Civ. P. 8(a)(2)).

## **Discussion**

### *1.  Statute of Limitations*

Defendant argues that the Court should limit Plaintiffs' Chapter 93A and Chapter 140D

claims to conduct occurring on or after October 11, 2015, under the applicable four-year statute of

limitations; Plaintiffs' contract claims to conduct occurring on or after October 11, 2013, under

the applicable six-year statute of limitations; and Plaintiffs' RESPA claim to conduct occurring on

or after October 11, 2016, under the applicable three-year statute of limitations.  (Docket No. 39

at 7–9).  "To assert a statute of limitations defense successfully in a motion to dismiss under

Federal Rule of Civil Procedure 12(b)(6), 'the facts establishing that defense must: 1) be definitively ascertainable from the complaint and other allowable sources of information, and 2) suffice to establish the affirmative defense with certitude.'" *Doe v. Bos. Pub. Sch.*, 80 F. Supp. 3d 332, 335 (D. Mass. 2015) (quoting *Gray v. Evercore Restructuring, LLC*, 544 F.3d 320, 324 (1st Cir. 2008)).   Here, Defendant has not shown that the allegations in the complaint definitively establish its entitlement to a statute of limitations defense limiting the scope of Plaintiffs' claims.

Plaintiffs' Chapter 93A and 140D claims, for example, are subject to a four-year statute of limitations, but that statute of limitation only begins to run when Plaintiffs' "cause of action accrues." *See* M.G.L. c. 260, § 5A.   "[T]he general rule for tort actions is that an action accrues when the plaintiff is injured." *Koe v. Mercer*, 450 Mass. 97, 101 (2007); *see also Int'l Mobiles Corp. v. Corroon & Black/Fairfield & Ellis, Inc.*, 29 Mass. App. Ct. 215, 221 (1990) ("The accrual date for a c. 93A cause of action is determined by the same principles dispositive of the accrual dates of general tort actions."). Under certain circumstances, however, a cause of action may not accrue until "the plaintiff discovers, or reasonably should have discovered, 'that [he] has been harmed or may have been harmed by the defendant's conduct.'" *Koe*, 450 Mass. at 101 (quoting *Bowen v. Eli Lilly & Co.*, 408 Mass. 204, 205–06 (1990)) (alteration in original). In this case, it is not clear from the face of the complaint whether the cause of action for conduct occurring prior to October 11, 2015, accrued prior to October 11, 2015.

In a similar vein, it is not clear from the face of the complaint whether Plaintiffs' contract and RESPA claims are premised on conduct occurring before October 11, 2013 (for the contract claims), or October 11, 2016 (for the RESPA claims). But even assuming that they are, the complaint does not definitively establish that the cause of action for such conduct accrued before these dates. It would thus be premature to rule on the statute of limitations issue at this juncture.

*2.  Chapter 93A Claim (Count I)*

Defendant suggests that Plaintiffs' complaint fails to sufficiently state a claim for relief

under Chapter 93A.  (Docket No. 39 at 10).  The Court disagrees.  Plaintiffs allege that, in

processing their loan modification applications, Defendant (1) repeatedly lied about whether it had

received documents from Plaintiffs and required Plaintiffs to resubmit "information that they had

already provided to Defendant" (Docket No. 36 at 3, 8); (2) misrepresented[5] the status of their

applications; (3) failed to apply the correct standards of review; (4) miscalculated Plaintiffs' loan

balance; (5) refused to correct any miscalculations; (6) failed to provide the results of its net present

value assessment despite Plaintiffs' requests for this information; and (7) scheduled foreclosure

sales despite knowing that Plaintiffs disputed the outstanding loan balance.  These allegations

provide enough information for Defendant to understand—and respond to—the claim against it.

*See Britton v. AthenaHealth, Inc.*, 87 Mass. App. Ct. 1139, 2015 WL 4726872, at *3 (2015) (noting

that "factual detail is unnecessary at this stage of the proceedings" as long as the defendant receives

"enough information to frame a responsive pleading").  They also suffice to state a claim for relief.

They establish a pattern of obstructionist behavior from which the Court can reasonably infer the

existence of unfair and deceptive practices.[6]  *See Aspinall v. Philip Morris Companies, Inc.*, 442

---

[5]      Defendant suggests that the heightened pleading standard of Federal Rule of Civil
Procedure 9(b) should govern the allegations of misrepresentation.  (Docket No. 39 at 16 n.10).
The Court doubts the accuracy of the statement—Plaintiffs are not alleging a separate claim of
fraud of mistake—but even accepting it as true, Plaintiffs have met their pleading burden.  The
complaint alleges, for example, that Defendant "informed Plaintiffs in a phone conversation that
Defendant would not consider[] Plaintiffs again for a loan modification" because "there was not a
significant change in Plaintiffs' circumstances." (Docket No. 36 at 5).  Two months later, however,
Defendant mailed Plaintiffs two denial letters that "stated it *had* considered them for a loan
modification." (Docket No. 36 at 5).  These allegations establish the circumstances of at least one
misrepresentation regarding the status of Plaintiffs' loan applications.
[6]      Defendant correctly notes that it had no obligation to modify Plaintiffs' loan.  (Docket No.
39 at 16).  But this fact has no bearing on whether Plaintiffs have stated a claim for unfair or
deceptive practices under Chapter 93A.  The gravamen of Count I is that Defendant acted in an

Mass. 381, 394 (2004) ("[A] practice is deceptive, for purposes of G.L. c. 93A, if it could

reasonably be found to have caused a person to act differently from the way he [or she] otherwise

would have acted." (citations and internal quotation marks omitted) (alteration in original));

*Linkage Corp. v. Trs. of Boston Univ.*, 425 Mass. 1, 27 (1997) ("A practice is unfair if it is 'within

. . . the penumbra of some common-law, statutory, or other established concept of unfairness; . . . is

immoral, unethical, oppressive, or unscrupulous; [and] . . . causes substantial injury . . . .'"

(quoting *PMP Assocs., Inc. v. Globe Newspaper Co.*, 366 Mass. 593, 596 (1975)) (alteration in

original). The Court accordingly ***denies*** the motion to dismiss Count I.

### 3.   *Contract Claims (Counts II & III)*

Defendant argues that Plaintiffs fail to sufficiently state a claim for breach of contract.

(Docket No. 39 at 10–11). Again, the Court disagrees. The complaint cites two contractual

provisions in the loan agreement which Defendant allegedly breached: (1) the requirement that

Defendant only charge Plaintiffs for actual expenses related to their mortgage; and (2) the

requirement that Defendant provide Plaintiffs with a default notice containing the correct

outstanding balance prior to foreclosure.[7] The complaint further identifies the nature of

Defendant's breach of these provisions: Defendant "included alleged payment charges that never

actually occurred" in its default notice, "failed to send Plaintiffs periodic billing statements,"

---

inequitable and dishonest manner while reviewing Plaintiffs' loan modification application and
that its conduct caused injury to Plaintiffs (e.g., by causing them to accrue more debt, suffer
damage to their credit scores, expend unnecessary time and resources resubmitting documentation,
etc.). Count I is not premised the denial of a loan modification itself.

[7]      Defendant asserts that Plaintiffs "fail[] to cite any specific provisions in either the Note or
Mortgage." (Docket No. 39 at 11). Because the nature of the breached obligations is clear from
the face of the complaint, however, Plaintiffs need not identify the specific provisions that
Defendant violated at this stage in the proceedings. Even without this information, Defendant has
enough information to file a responsive pleading. To the extent Defendant may suggest in its
responsive pleading that the referenced terms are not part of the parties' contract, that is a factual
dispute which the Court must resolve in Plaintiffs' favor at this juncture.

"collect[ed] finances charges for the months that it never sent Plaintiffs these statements," refused to refund these finance charges, and scheduled a foreclosure sale "while simultaneously informing Plaintiffs that it was researching these mistakes." (Docket No. 36 at 7). Because these allegations establish the material terms of the parties' agreement and Defendant's alleged breach of those terms, the complaint plausibly demonstrates entitlement to relief for breach of contract and breach of the covenant of good faith and fair dealing.[8] The Court therefore ***denies*** the motion to dismiss Counts II and III.

### 4. Chapter 140D Claim (Count IV)

Defendant contends that Plaintiffs do not include enough detail to establish any violation of Chapter 140D. (Docket No. 39 at 12). A fair reading of the complaint, however, suggests otherwise. Plaintiffs allege that "Defendant violated G.L. c. 140D, § 19 by billing Plaintiffs with finance charges for months that Defendant failed to provide Plaintiffs with a periodic billing statement, and subsequently failing to provide Plaintiffs with a credit or refund for those charges." (Docket No. 36 at 10; *see also* Docket No. 36 at 7). While Plaintiffs do not identify the specific months for which Defendant failed to send a periodic billing statement, this level of detail is unnecessary at the pleading stage, *see* Fed. R. Civ. Pro 8(a)(2) ("A pleading that states a claim for relief must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief . . . ."); *see also Britton*, 2015 WL 4726872, at *3. All that is required is that the complaint contain enough detail to alert Defendant as to the nature of Plaintiffs' Chapter 140D claim, and

---

[8]     Defendant suggests that Plaintiffs cannot recover because they breached their obligations under the contract. But Plaintiffs allege facts which, taken as true, plausibly suggest that Defendant induced this breach. And in any event, Defendant has not shown that its performance of the referenced terms was contingent on receiving loan payments. To the contrary, these provisions seem to provide for Plaintiffs' nonperformance: There would be no default without the failure to make proper loan payments.

Plaintiffs' complaint meets this burden.  The Court accordingly ***denies*** the motion to dismiss Count

IV.

### 5.  *RESPA Claim (Count V)*

Defendant argues that the RESPA claim fails as a matter of law because the claim is pled

under 12 C.F.R. § 1024.35, and "disputing a loss mitigation decision is not a 'covered error' under

the section 1024.35's error resolution procedures."  (Docket No. 44 at 6).  The Court agrees in

part.  Section 1024.35 only requires a servicer to respond to qualified written requests related to

certain types of covered errors, and disputes related to the substance of a servicer's review of a

loss mitigation application do not fall under the umbrella of covered errors.[9]  Plaintiffs thus cannot

recover for miscalculations or Defendant's failure to explain its decision as the claim is currently

pled.   The RESPA claim, however, is not entirely premised on denial of Plaintiffs' loan

modification applications.  Mrs. Canty[10] also alleges that she "sent multiple letters to Defendant"

regarding incorrect financing charges when it scheduled her house for foreclosure sale and that

Defendant failed to reasonably investigate these charges.   (Docket No. 36 at 8).   As the

"[i]mposition of a fee or charge that the servicer lacks a reasonable basis to impose upon the

---

[9]      Plaintiffs argue that their disputes fall within the scope of § 1024.35(b)(7).  But this
subsection covers only a loan servicer's "[f]ailure to provide accurate information to a borrower
regarding loss mitigation options and foreclosure, *as required by 12 C.F.R. § 1024.39*."  And
§ 1024.39, in turn, details a loan servicer's obligations to send a delinquent borrower "a written
notice . . . providing a brief description of examples of loss mitigation options that may be available
from the servicer" within a certain timeframe after delinquency.  *See also Tanasi v. CitiMortgage,
Inc.*, 257 F. Supp. 3d 232, 268 (D. Conn. 2017).  Because § 1024.39 does not require loan servicers
to provide accurate information regarding the status or denial of an application once an individual
chooses to pursue one of those options, subsection (b)(7) does not cover disputes related to the
failure to provide this information.

[10]      Defendant suggests that, because only Mrs. Canty signed the promissory note, Mr. Canty
lacks standing to pursue a RESPA claim against Defendant.  (Docket No. 39 at 13).  Plaintiffs do
not offer any argument in opposition.  The Court accordingly ***grants*** the motion to dismiss Count
V as applied to Mr. Canty.

borrower" is a covered error under subsection (b)(5), these allegations suffice to establish a

violation of the requirements of § 1024.35.

Defendant contends that this claim nonetheless fails because Mrs. Canty has not alleged

any damages and, to bring a RESPA claim, a plaintiff must plead actual or statutory damages. *See*

*Kassner v. Chase Home Fi*n., LLC, No. 11-10643, 2012 WL 260392, at *7 (D. Mass. Jan. 27,

2012).  Defendant is correct.  To establish actual damages, "a plaintiff must allege specific

damages and identify how the purported RESPA violations caused those damages."  *Foregger v.*

*Residential Credit Sols., Inc*., No. 12-11914, 2013 WL 6388665, at *4 (D. Mass. Dec. 5, 2013)

(citations and internal quotation marks omitted).  Here, Mrs. Canty pleads specific damages of (1)

"lost time, inconvenience, mileage, printing, and mailing costs in having to prepare unnecessary

loan modification supplements and new applications," (2) "[i]ncreased debt, late fees, and other

service charges accrued on Plaintiffs' mortgage loan due to the delay in reviewing Plaintiffs' loan

modification applications," (3) "[d]amage to Plaintiffs' credit score, on account of the mortgage

loan remaining in arrears," and (4) "[e]motional distress and anguish from having to repeatedly

resubmit unnecessary loan modifications and supplements, continuously contact Defendant for

updates on their loan modification applications, and efforts to address the contradictions and

mistakes made by Defendant in reviewing Plaintiffs for loss mitigation assistance."[11]  (Docket No.

---

[11]     She also pleads statutory damages related to "a pattern or practice of noncompliance with" RESPA requirements (Docket No. 36 at 11), but her allegations of incorrect financing charges, without any indication of how often Defendant imposed these charges or how many written notices Mrs. Canty submitted to correct them, do not demonstrate a pattern or practice of noncompliance with RESPA requirements. *Brown v. CitiMortgage, Inc*., No. 16-11484, 2017 WL 1363305, at *4 (D. Mass. Apr. 11, 2017) (determining that the plaintiffs had not sufficiently alleged a pattern or practice of noncompliance where they identified only two RESPA violations occurring within the statute of limitations); *Bulmer v. MidFirst Bank, FSA*, 59 F. Supp. 3d 271, 279 (D. Mass. 2014) ("[T]he only RESPA violation Plaintiff has supported is Defendant's failure to adequately respond to one written QWR. Simply put, that one failure is not enough to demonstrate a pattern or practice of noncompliance for purposes of statutory damages.")

36 at 11).   As these damages relate to issues in the review of Mrs. Canty's loss mitigation application rather than the imposition of improper financing charges, they do not suffice to establish actual damages for the surviving portion of the RESPA claim.   The Court accordingly *grants* the motion to dismiss.

## Conclusion

For the reasons stated above, Defendant's motion is ***granted*** in part and ***denied*** in part. (Docket No. 38).   Counts I through IV survive this motion.   Count V is dismissed.

**SO ORDERED**

*/s/ Timothy S. Hillman*
**TIMOTHY S. HILLMAN**
**DISTRICT JUDGE**